**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew Chad Biggs, | No. CV11-330-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Town of Gilbert, a municipality; et al., | |
| Defendants. | |

Currently pending before the Court is Defendants' Motion for Judgment on the Pleadings (Doc. 50). The Court now rules on the Motion.

## **BACKGROUND**

Plaintiff Andrew Biggs used to be a police officer with the Town of Gilbert Police Department. On August 9, 2009, while off duty, Plaintiff was involved in an altercation with a shoplifter, Veronica Rodriguez, and her acquaintance, Therin Castillo, outside a Wal-Mart in Chandler, Arizona. At some point during the altercation, Plaintiff shot Castillo in the leg.

Shortly after the shooting, the Gilbert Police Leadership Association ("GPLA"), a labor union, offered to provide Plaintiff with legal counsel during the post-shooting investigation process, and Plaintiff accepted the offer. Both the Maricopa County Attorney's Office and the Arizona Peace Officer Standards and Training Board eventually cleared Plaintiff's actions in the shooting.

On December 15, 2009, the Gilbert Police Department's internal review board

conducted its own review of the shooting. Thereafter, on December 17, 2009, Defendant Commander Buckland recommended that Plaintiff be terminated. The Town of Gilbert therefore held a pre-termination hearing on December 29, 2009. At the hearing, Defendant Gilbert Police Chief Dorn made the decision to demote Plaintiff to the position of a 911 Operator, rather than to fire him. Plaintiff's demotion took effect on January 4, 2010.[1]

Pursuant to the Gilbert Personnel Rules and Town Policies, Plaintiff appealed his demotion on January 3, 2010. The hearing on his appeal was held on March 18, 19, and 24, 2010. On June 11, 2010, the hearing officer, Guy Parent, upheld Plaintiff's demotion. On July 19, 2010, Plaintiff filed a Special Action Petition in Maricopa County Superior Court challenging the hearing officer's decision to uphold his demotion. On November 12, 2010, the Superior Court dismissed Plaintiff's Petition.

On September 22, 2010, Plaintiff served notice of claims, pursuant to A.R.S. §12-821.01, on Defendants. (1st Am. Compl. ¶73.) Plaintiff filed suit in state court on December 15, 2010. Defendants removed to this Court on February 18, 2011.

Defendants filed their first Motion for Judgment on the Pleadings on February 25, 2011. The Court granted in part and denied in part that motion on May 11, 2011. (Doc. 37.) The Court allowed Plaintiff to file an amended complaint to attempt to state a federal claim.

Plaintiff filed his Second Amended Complaint on May 20, 2011. (Doc. 38.) Plaintiff filed a motion to amend the Second Amended Complaint on June 30, 2011. (Doc. 42.) Because Defendants did not oppose the timely motion to amend, the Court granted the motion on July 15, 2011. (Doc. 45.) Plaintiff filed his Third Amended Complaint (the "TAC") on July 15, 2011. (Doc. 46.)

On May 15, 2011, Defendant Sy Ray allegedly requested that an Internal Affairs

---

[1] The Court can take judicial notice of matters incorporated into the complaint and matters of public record, such as court filings and pleadings, without converting the Motion into a motion for summary judgment. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)(internal citations omitted). The Court takes judicial notice herein of uncontested facts from its prior orders and from other pleadings filed in this case.

("IA") investigation be conduced to determine whether Plaintiff violated the Gilbert Police Department's Standards of Conduct policy by causing a public document to be created in which false statements were made. Defendant Ray quoted from Plaintiff's Amended Complaint in the request. Plaintiff believes that the Gilbert Police Department granted Defendant Ray's request and opened an investigation into some of the statements made in his Amended Complaint. Plaintiff does not allege who, if anyone, conducted this IA investigation.

On May 31, 2011, Plaintiff received notice of another IA investigation. The notice advised him that the Gilbert Police Department was investigating whether allegations contained in his "amended complaint" were untruthful.

Plaintiff tendered his resignation as a 911 Operator on June 6, 2011. Plaintiff claims that his working conditions were so awful that he could not remain. He did not give any advanced notice before quitting.

On August 1, 2011, Defendants filed the pending Motion for Judgment on the Pleadings directed toward the TAC. (Doc. 50.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) is "functionally identical" to Rule 12(b)(6). The same legal standard therefore applies to motions brought under either rule. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

The standard for deciding Rule 12(b)(6) and Rule 12(c) motions has evolved since the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).[2] To survive a motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.* Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct at 1949 (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that

---

[2]The Ninth Circuit Court of Appeals has applied *Iqbal* to Rule 12(c) motions. *Cafasso ex rel.*, 637 F.3d 1047,1055 n.4 (9th Cir. 2011).

are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss, the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court may dismiss a complaint for failure to state a claim for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## §1983 CLAIMS

Plaintiff has alleged five sub-claims under his §1983 claim for relief. The Court will label those claims as and address them in the order Plaintiff alleged them in the TAC.

### FOURTEENTH AMENDMENT DUE PROCESS VIOLATION RESULTING IN PROPERTY DEPRIVATION

Plaintiff alleges that he did not receive meaningful procedural due process before the Town of Gilbert demoted him to a 911 Operator because certain Defendants withheld evidence from the internal review board and made false statements before the internal review board. After the internal review board concluded its investigation, Commander Buckland recommended that Plaintiff be terminated. The Town thereafter held a pre-termination hearing, after which Chief Dorn decided to demote Plaintiff. Plaintiff does not dispute that he received a pre-termination hearing. (TAC ¶62.)

A §1983 claim based on procedural due process has three elements: 1) a constitutionally protected liberty or property interest; 2) a governmental deprivation of the interest; and 3) lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1992). Defendants do not dispute that Plaintiff had a constitutionally protected property interest in his continued employment as a police officer, nor do they dispute that Plaintiff was demoted from his position as a police officer. Defendants do argue that Plaintiff received

sufficient due process.

The Fourteenth Amendment's procedural protections do not guard against unfair or untrue charges. "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Id.* at 908. The Due Process Clause instead guarantees adequate process, i.e., notice and a name-clearing hearing. *Id.* at 907.

Plaintiff's due process allegations are misplaced because they relate to his employer's internal review proceeding. Plaintiff was not demoted as a result of the internal review board's findings, which recommended dismissal. He was not demoted until after he received a full pre-termination hearing with notice and benefit of counsel.[3]

Plaintiff has not alleged that any of the individual Defendants perjured themselves at his pre-termination hearing. Nor has he alleged any other hearing irregularities. Plaintiff's most recent complaint is his fourth complaint in this case. If he believed that the process afforded to him at the pre-termination hearing was lacking, then he should have and would have alleged it by his fourth bite at the apple.

Not only did Plaintiff have a full hearing with representation before his demotion, he also pursued an appeal of the decision to demote him. After a hearing officer upheld Plaintiff's demotion, Plaintiff filed a Special Action Petition challenging the hearing officer's decision to uphold his demotion. That Petition was dismissed.

Plaintiff obviously strongly disagrees with his demotion, and perhaps the Town of Gilbert made an unfair or bad personnel decision in demoting him.[4] But the Due Process Clause does not protect against unfair personnel decisions. It only guarantees adequate procedural safeguards.

The Court finds that Plaintiff received more than sufficient procedural due process

---

[3] The process for imposing discipline against law enforcement officers is set by Arizona law. A.R.S. §38-1101.

[4] The Court expresses no judgment here regarding the propriety of Plaintiff's demotion.

- 6 -

before he was fired. The Court therefore will grant judgment on the pleadings to Defendants on Plaintiff's due process property deprivation claim.

### FOURTEENTH AMENDMENT DUE PROCESS VIOLATION RESULTING IN LIBERTY DEPRIVATION

Plaintiff alleges that his demotion without adequate procedural due process deprived him of a constitutionally protected liberty interest as well as a property interest. A person's freedom to work and earn a living is a liberty interest protected by the Due Process Clause. *Portman*, 995 F.2d at 907.

When the government terminates or demotes a person for reasons that might seriously damage his standing in the community, then he is entitled to due process. *Id*. But to implicate a constitutionally protected liberty interest the reasons for termination must be serious enough to stigmatize or otherwise burden the person so that he cannot take advantage of other employment opportunities. *Id*. A protected liberty interest is also implicated if the charges against a person permanently exclude him from his profession, even if the charges do not rise to the level of stigmatization. *Id*. at 908.

Because the Court has determined that Plaintiff received sufficient procedural due process before his demotion, the Court does not need to decide whether the charges against him were serious enough to stigmatize him or if he is permanently excluded from his profession. Even assuming he had a protected liberty interest, he received sufficient due process. The Court therefore grants judgment to Defendants on Plaintiff's due process liberty deprivation claim.

### VIOLATIONS OF PLAINTIFF'S FIRST AMENDMENT FREEDOMS OF SPEECH, ASSOCIATION AND RIGHT TO PETITION FOR REDRESS

Plaintiff's First Amendment claims are retaliation claims. He claims that Defendants retaliated against him for exercising his First Amendment rights to petition for redress and to associate with legal counsel.

To establish a prima facie case for a typical First Amendment retaliation claim, a public employee must show that: 1) he engaged in protected speech; 2) the defendants took an adverse employment action against him; and 3) his speech was a substantial or motivating

factor for the adverse employment action. *Hudson v. Craven*, 403 F.3d 691, 695 (9th Cir. 2005). The First Amendment protects a public employee's speech only if the speech addresses "'a matter of legitimate public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)(quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571 (1968)). If the employee did not speak on a matter of public concern, then the employee has no First Amendment cause of action based on the employer's reaction to the speech. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The Court decides as a matter of law whether the employee's speech involved a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983).

Plaintiff alleges that Defendants retaliated against him for filing this lawsuit and associated administrative pleadings and for his decision to have union counsel represent him. His specific retaliation claims arise under the Petition Clause and the First Amendment right to association, not the Speech Clause. The Court therefore must determine whether the public concern requirement applicable to First Amendment speech claims also applies to right to petition and freedom of association claims.

**Right to Petition**

Very recently, in *Borough of Duryea, Pennsylvania v. Guarnieri*, the Supreme Court found that like speech claims, the public concern test limits Petition Clause claims by public employees. 131 S.Ct. 2488, 2492 (2011); *see also Rendish v. City of Tacoma*, 123 F.3d 1216, 1223 (9th Cir. 1997)("We simply hold that a public employee cannot present a cognizable section 1983 claim challenging a retaliatory employment decision made by her government-employer unless her litigation involves a matter of public concern."). The Supreme Court found no reason to differentiate between the Speech Clause and the Petition Clause in the public employment context. *Guarnieri*, 131 S.Ct. at 2495. The Supreme Court held, "If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases." *Id.* at 2500. The right of a public employee to petition the government "is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform

- 8 -

everyday employment disputes into matters for constitutional litigation in the federal courts." *Id.* at 2501.

Plaintiff's TAC involves an everyday employment dispute. He complains about his demotion and his treatment at the hands of his fellow officers and the Town of Gilbert. The TAC does not touch on a matter of public concern. Because Plaintiff's lawsuit involves a matter of purely private concern, he cannot state a retaliation claim under the First Amendment Petition Clause.

**Right to Associate**

The First Amendment guarantees the right to associate for the purpose of engaging in activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion. *IDK, Inc. v. County of Clark*, 836 F.2d 1185, 1191-92 (9th Cir. 1988). The freedom of expressive association permits groups to engage in the same activities that individuals can freely pursue under the First Amendment. *Id.* at 1193. Courts have recognized that the right to consult an attorney is protected by the First Amendment's guarantee of freedom of association. *Eng v. Cooley*, 552 F.3d 1062, 1069 (9th Cir. 2009).

Plaintiff argues that Defendants retaliated against him because he retained counsel provided by his union to represent him.[5] As with Plaintiff's right to petition claim, the Court must decide whether the public-concern test applies to a First Amendment freedom to associate claim when the association involves legal counsel. The Court does not address in this section the freedom to associate protected by the Fourteenth Amendment. The Court discusses the Fourteenth Amendment freedom to associate below.

The Court could not find a Supreme Court case or a Ninth Circuit Court of Appeals case directly on point. But the Ninth Circuit held in *Hudson* that the public-concern requirement applies to a hybrid speech/association claim. 403 F.3d at 698. The *Hudson*

---

[5]Plaintiff has alleged no facts demonstrating that any Defendant retaliated against him for joining a union or participating in union meetings, activities. Any attempt to craft a union retaliation claim through argument in the briefing therefore fails.

- 9 -

court noted that the associational aspects of that plaintiff's First Amendment claim predominated over the speech aspects of her claim. The Ninth Circuit's ruling in *Hudson*, and the precedent it relied on in that opinion, indicate that the Ninth Circuit would hold that the public-concern requirement applies to a claim for the right to associate with counsel for the purpose of legal representation.

Although not binding on this Court, the Court finds the Tenth Circuit's recent on point opinion in *Merrifield v. Board of County Commissioners for the County of Santa Fe* persuasive and instructive. 654 F.3d 1073 (10th Cir. 2011). In *Merrifield*, the plaintiff alleged that the defendants had terminated him because they disapproved of him retaining an attorney to represent him in his disciplinary matter. *Id.* at 1079. The Tenth Circuit had to determine whether the public-concern requirement applies to a claim by a government employee that he was retaliated against because of the exercise of his First Amendment freedom of association.[6]

The court found that the public-concern requirement applies to a claim that a government employer retaliated against an employee for exercising his right of freedom of association for the purpose of engaging in speech, assembly, or petitioning for redress of grievances. *Id.* at 1081-82. In reaching that conclusion, the Tenth Circuit noted that the public-concern requirement from speech-retaliation cases has its origin in freedom of association cases. *Id.* at 1082 (citing *Connick*, 461 U.S. 138 at 144-45). The court found it would be "ironic, if not unprincipled, if the public-concern requirement derived from freedom-of-association cases did not likewise apply to retaliation for such association." *Merrifield*, 654 F.3d at 1082.

The Tenth Circuit additionally found that to give special status to retaliation claims based on nonreligious freedom of association, by removing the public-concern requirement,

---

[6]The Tenth Circuit did not determine whether the public-concern requirement applies when a government employee claims retaliation based on her exercise of the intrinsic freedom of association protected by substantive due process of the Fourteenth Amendment or when the association is for the exercise of religion. *Merrifield*, 654 F.3d at 1080.

would violate the Supreme Court's teaching that the "political" First Amendment rights should be treated equally, at least in the government employment context. *Id*. at 1082-83 (citing *Guarnieri*, 131 S.Ct. at 2495 & *McDonald v. Smith*, 472 U.S. 479, 485 (1985)). The Tenth Circuit panel highly doubted that the Supreme Court would not impose the public-concern requirement on claims that the government retaliated against an employee for associating with an attorney to speak or petition when the Supreme Court does impose that requirement on claims that the government retaliated for speaking or petitioning the government. *Id*. at 1083. This Court agrees.

Based on the foregoing, the Court finds that the public-concern requirement applies to First Amendment freedom of association retaliation claims when the association involves the retention of legal counsel to speak or to petition the government for redress. To hold otherwise would afford more protection to the freedom of association, which derives from the right to effectuate First Amendment rights, than to the actual, enumerated First Amendment rights themselves.

The Court further finds that Plaintiff's retention of counsel in this case does not satisfy the public-concern requirement. Counsel's representation of Plaintiff during the disciplinary proceeding and later representation was not to pursue matters of public concern. The representation did not go beyond the realm of an everyday employment dispute.

Because the Court finds that Plaintiff's association with counsel did not involve a matter of public concern, his First Amendment freedom of association claim fails as a matter of law. Plaintiff cannot state a claim for First Amendment retaliation because his speech, petition, and association allegations do not satisfy the public-concern requirement. The Court therefore will grant judgment to Defendants on Plaintiff's First Amendment retaliation claims.

**VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT LIBERTY INTEREST IN FREE ASSOCIATION**

Plaintiff makes two types of freedom of association claims – the First Amendment claim discussed above and a claim under the Fourteenth Amendment. The choice to enter

into certain relationships must be protected from undue intrusion by the government because of the role such relationships play in safeguarding individual freedom. *IDK*, 836 F.2d at 1192 (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). This type of association receives protection as a fundamental element of personal liberty. *Id*. The Supreme Court has identified the source of protection for these relationships as the Due Process Clause of the Fourteenth Amendment. *IDK*, 836 F.2d at 1192.

The relationships protected by the Fourteenth Amendment "are those that attend the creation and sustenance of a family and similar highly personal relationships." *Id*. at 1193 (internal quotations omitted). The individuals in these protected relationships are "deeply attached and committed to each other as a result of their having shared each other's thoughts, beliefs, and experiences." *Id*. Because of the very nature of such relationships, one normally is involved in relatively few intimate associations over the course of his or her lifetime. *Id*. The factors relevant to determining whether an association can claim the protection of the due process clause are: the group's size; its congeniality; its duration; the purposes for which it was formed; and the selectivity in choosing participants. *Id*.

Because only two people are involved, Plaintiff's relationship with his attorney is the smallest possible association. But in almost every other regard, Plaintiff's relationship with his attorney lacks the aspects of an intimate, deeply committed association. Like the relationship at issue in *IDK*, Plaintiff's relationship with his attorney lasts for a short period of time and likely only as long as someone is paying for the attorney's services. *Id*. ("In fact, the relationship between a client and his or her paid companion may well be the antithesis of the highly personal bonds protected by the fourteenth amendment."). And the relationship is not exclusive; the attorney is involved with a large number of clients. Moreover, Plaintiff seemingly did not choose his attorney, his union provided the attorney.

The Court therefore finds that Plaintiff's association with his attorney is not the type of highly intimate and committed relationship protected by the Due Process Clause of the Fourteenth Amendment. Consequently, the Court will grant judgment to Defendants on Plaintiff's Fourteenth Amendment freedom of association claim.

# VIOLATIONS OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND FIRST AMENDMENT RIGHT TO PETITION FOR REDRESS

Under this subclaim, Plaintiff re-alleges First Amendment right to petition and Fourteenth Amendment procedural due process claims. This sub-section of the TAC deals specifically with Defendants' alleged retaliation via IA investigations for Plaintiff's decision to file suit.

As the Court concluded above, Plaintiff's lawsuit does not involve a matter of public concern and he therefore cannot state a claim for retaliation for exercising his First Amendment right to petition. The Court need not re-address that issue here.

Plaintiff does not allege how the initiation of the alleged IA investigations violated his procedural due process rights. And Plaintiff must assert more than a mere legal conclusion of harm to survive a motion for judgment on the pleadings. *Iqbal*, 129 S.Ct at 1949 (citing *Twombly*, 550 U.S. at 555).

The Court therefore will grant judgment on the pleadings to Defendant on the last subclaim under his §1983 claim – his re-alleged First Amendment retaliation and procedural due process claims.

## **CONSTRUCTIVE DISCHARGE**

Plaintiff added an A.R.S. §23-1502 constructive discharge claim to his amended complaint after he left his employment as a 911 Operator. Plaintiff alleges that Defendants'[7] "outrageous conduct in retaliating against Plaintiff, by conducting multiple internal affairs investigations into him and otherwise repeatedly and continuously harassing, humiliating, demeaning and defaming Plaintiff and depriving him of his Constitutionally-protected rights . . . created working conditions so intolerable that Plaintiff was compelled to resign." (TAC

---

[7]The Court notes that the parties stipulated on January 6, 2012 (Doc. 61) to dismiss the constructive discharge claim against Defendants Gilbert Police Department, Mike Angstead, Lisa Angstead, Ken Buckland, Christi Buckland, Benny Fisher, Heather Fisher, Tom Blaine, Karen Blaine, Pete Rangel, Aimee Thorpe Rangel, Chris Zamora, Amanda Zamora, Mark Marino, and Karen Marino.

¶102.) Plaintiff admits that he did not give prior notice of his intent to resign.

The Arizona Employment Protection Act (the "AEPA") sets out the procedural requirements for bringing a constructive discharge claim. A.R.S. §23-1502(B); *Barth v. Cochise County*, 138 P.3d 1186, 1189 (Ariz. Ct. App. 2006). The procedural prerequisites are: 1) providing written notice to the employer that a working condition exists that the employee believes is so difficult or unpleasant that the employee must resign; 2) allowing the employer fifteen (15) calendar days to respond to the notice in writing; and 3) reading and considering the employer's response. A.R.S. §23-1502(B)(1)-(3).

But an employee can dispense with those prerequisites if the employer or managing agent of the employer committed "outrageous" conduct. A.R.S. §23-1502(F). The statute lists the following as examples of outrageous conduct, "sexual assault, threats of violence directed at the employee, [and] a continuous pattern of discriminatory harassment by the employer or by a managing agent of the employer." *Id*.

The Court finds as a matter of law that even if two IA investigations were instituted against Plaintiff and assuming the scant other facts alleged in his TAC regarding his 911 Operator working conditions are true, the facts alleged do not constitute outrageous conduct. And without outrageous conduct, Plaintiff's failure to give notice of his intent to resign prohibits him from bringing an AEPA constructive discharge claim. *Barth*, 138 P.3d at 1190 ("Before an employee may file a constructive discharge action, the employee must first have given the employer an opportunity to address the issue."). The Court therefore grants judgment to Defendants on Plaintiff's claim for constructive discharge under A.R.S. §23-1502.

Accordingly,

///

///

///

///

**IT IS ORDERED** Granting Defendants' Motion for Judgment on the Pleadings (Doc. 50). The Clerk shall enter judgment for all Defendants against Plaintiff.

DATED this 11th day of January, 2012.

_____
James A. Teilborg
United States District Judge